ERICH MILDENBERG, Commissioner Office of the Commissioner ofBanking
You have asked whether sec. 112.05, Stats., makes it a criminal offense for trust company banks and state chartered banks, with trust powers, to purchase or sell United States Treasury bills, or other federal agency obligations fully guaranteed by the full faith and credit of the United States government, on a deferred delivery-deferred payment basis. For the reasons set forth below, it is my opinion that such activity does not constitute a crime.
The proposed activity would have a bank secure a contract for deferred delivery of a federal agency obligation such as a treasury bill with payment on a deferred basis on a specific future settlement date. The brokerage house, under your stated situation, would commit in writing to deliver these obligations or bills on the established settlement dates. It appears that the bank would not pledge any assets nor make any guarantee as collateral for its obligation to pay the brokerage house on the future settlement date, nor would it borrow any funds for that purpose. *Page 373 
Apparently, the purpose of such a transaction is to obtain a commitment to purchase such obligations at rates which may not be available at the settlement date. No margin account is established at the time of commitment nor would the bank provide any assurances at any time to protect against fluctuations in the interest rates of such obligations or bills. You further state that the commitment by the brokerage house to deliver the obligations at the stated rate on the settlement date is, itself, a marketable contract right.
The basis of your inquiry is sec. 112.05, Stats., which states:
 TRUST FUNDS; PERSON HOLDING PROHIBITED FROM DEALING IN MARGINS. Any person engaged in the business of receiving deposits of money for safekeeping, any officer or employe of any bank, banking company, or trust company, any executor, administrator, guardian, trustee, or receiver, or any other person holding property or money in any manner in a trust capacity, who shall buy, sell, deal, or traffic in any goods, stocks, grains, or other property or article of commercial barter by making or requiring any deposit, payment or pledge of any margin or of any money or property to cover future fluctuation in the price of such goods, stocks, grains, or other property so bought sold dealt, or trafficked in, shall be punished by imprisonment in the Wisconsin state prisons not more than 10 years, nor less than one year. Nothing in this section prohibits any person who acts in a fiduciary capacity from using personal funds for any purpose whatever.
This statute has recently been discussed at length in 68 Op. Att'y Gen. 277 (1979), dated September 21, 1979. The analysis of that opinion is applicable here.
It is clear that the subject banks would not buy or sell such government obligations "by making or requiring any deposit, payment, or pledge of any margin or of any money or property to cover future fluctuations in the price of such . . . property." The price on the settlement date is fixed and the bank does not pledge or pay any margin. Therefore, the proposed activity does not violate sec. 112.05, Stats. Of course, as indicated in the recent opinion. 68 Op. Att'y Gen. 277 (1979), dated September 21, 1979, whether such activities by *Page 374 
fiduciary banks violate the prudent man rule is not considered in this opinion.
BCL:LEN